**LABOR RELATIONS CONNECTION**

In the matter of:

UNITE HERE! LOCAL 26,

    and

ENCORE BOSTON HARBOR.

Timothy Underwood - Termination

Before:
Marc Greenbaum, Esq., Neutral Arbitrator

## **Introduction**

Encore Boston Harbor ("Encore") had just cause to terminate grievant Tim Underwood ("Underwood"). In response to colleague Ana Martinez encouraging him to cheer up, Underwood told her, "my name ain't dick, so keep it out of your mouth." When Martinez objected to what he had said, Underwood said it again. There is no dispute that Underwood made the comment. There also can be no question that the comment is vulgar and of a sexual nature. Underwood implied that Martinez was only useful to perform oral sex and that she otherwise should keep her mouth shut.

Termination was appropriate. Article 28 of the collective bargaining agreement ("CBA") between Encore and Local 26 ("the Union") states that there is zero tolerance for sexual harassment and that employees "engaging in such conduct will be subject to discipline including immediate discharge." Joint Exhibit ("JX") 1. Further, Underwood's vulgar, sexual comments fall squarely within the definition of "verbal sexual harassment" found in Encore's Preventing Harassment and Discrimination Policy. Employer Exhibit ("EX") 11. "Verbal sexual harassment" is defined as "lewd remarks or threats" or "verbal abuse or 'kidding' that is oriented toward a prohibited form of harassment, including that which is sexual in nature and unwelcome." *Id*. Encore has routinely terminated employees who have engaged in similar conduct.

93790056v.1

Despite that the Union agreed in Article 28 that conduct like that of Underwood warrants termination, it engaged in victim-blaming at the hearing, subjecting Martinez to questions about irrelevant Tik Tok videos, innuendo that she was friendly with management and her history of reporting employee misconduct. Perhaps such tactics could make a modicum of sense if this were a he said/she said case, but Underwood *admitted* to saying, "my name ain't dick, so keep it out of your mouth." And of course, the Union purportedly represents Martinez, not just Underwood, and it owed her a duty of fair representation, not to attack her character.

The Union's further argument that something less than termination is warranted here runs aground on the CBA and the facts. Again, the Union has agreed that Encore shall maintain "zero tolerance" for sexual harassment. Before this case, the Union seemingly understood and agreed that Encore had an obligation to take all necessary steps to maintain a workplace free of sexual harassment. Beyond the language of the CBA, Underwood knew his comment offended Martinez. After she asked him to stop, he said it again. While the Union contends that Underwood apologized for his conduct, his empty "apology" evaporated when he called Martinez "rude" for reporting him.

The grievance must be denied.

### Facts

A.   **Collective Bargaining Agreement**

Encore and the Union are parties to a collective bargaining agreement ("CBA"). JX 1. Article 19 reserves to Encore the right "to establish and administer reasonable rules, regulations and procedures governing the conduct of employees upon notification to the Union, provided that such rules, regulations and procedures are not inconsistent with any provisions of this Agreement." *Id.* at 15. Article 17 states that "[e]mployees may be discharged, suspended, or disciplined by the Employer for just cause" and "[t]he parties agree that the policy of progressive discipline shall be

used in all cases where warranted[.]" *Id.* at 14. Typically, disciplines that are more than 12 months old may not be used at arbitration. However, the parties agreed that this does not apply to "violations of the preventing harassment and discrimination policy." *Id*. at 15.

Further, the parties agreed that Encore must have zero tolerance for sexual harassment. Article 28, titled "Sexual / Harassment and Workplace Violence" states that "[h]arrasment and workplace violence will not be tolerated." Further:

> **Individuals engaging in such conduct will be subject to discipline including immediate discharge**. Harassment for the purposes of this article includes, but is not limited to, abusive or threatening language, conduct creating a hostile work environment, workplace violence and sexual harassment.
>
> Sexual harassment is also considered a form of sex discrimination. **No employee shall be subjected to sexual harassment in the workplace.** This shall include sexual harassment because of a person's sexual preference or orientation.
>
> In this spirit a statement of policy and commitment to this principle will prevail in all work areas. **The parties also agree that the employers will take reasonable steps to eliminate sexual harassment from the property** whether from supervisors, employees or customers, including annual training for all employees and supervisors, of an awareness program regarding the problem of sexual harassment. The employers will confer upon request with the union regarding the contents and scheduling of such programs.

*Id.* at 21-22 (emphasis added).

Article 20 provides the grievance and arbitration procedure. *Id.* at 16. The "arbitrator shall be bound by the terms of this Collective Bargaining Agreement and shall have no right in any way to modify or revise it." *Id*. at 17.

### B.   Preventing Harassment and Discrimination Policy

Encore maintains a policy entitled, Preventing Harassment and Discrimination Policy ("Preventing Harassment Policy"), which is applicable to all employees. EX 11. Underwood received and acknowledged receipt of the Preventing Harassment Policy. T. Underwood. The policy states:

> Harassment and discrimination are unacceptable. We are committed to creating a respectful, courteous work environment free of unlawful discrimination and harassment of any kind. The Company does not tolerate sexual or other unlawful harassment or discrimination by any employee, volunteer, vendor, contractor, consultant, agent, guest, customer, or visitor. Harassment and discrimination are breaches of Company policy, and may be violations of state and/or federal law. In addition to any disciplinary action that the Company may take, up to and including termination, offenders may also be personally liable for any legal and monetary damages.

EX 11 at 1. The policy defines "harassment" as "unwelcome conduct, as determined by the recipient of the harassing behavior, whether verbal, physical or visual, that is based upon a person's Protected Characteristic." *Id*. The policy defines "sexual harassment" as:

> [U]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when any one of the following occurs:
> - Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment.
> - Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.
> - **Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.**

*Id.* at 2 (emphasis added). The policy clarifies that "verbal sexual harassment" may include:

> innuendoes, suggestive comments, jokes of a sexual nature, sexual propositions, **lewd remarks and threats**; requests for any type of sexual favor (this includes repeated, unwelcome requests for dates); and **verbal abuse or "kidding"** that is oriented toward a prohibited form of harassment, **including that which is sexual in nature and unwelcome**.

*Id.* (emphasis added). The policy provides examples of sexual harassment, including:

> An employee tells jokes or stories, posts or distributes materials on social media, or **uses profanity that is sexually offensive, has sexual content**, or is insulting or derogatory to an individual's Protected Characteristic, or sends, forwards, transmits or distributes such jokes or stories, or materials, via e-mail, text messaging, or any other means.

*Id*. at 3 (emphasis added). Employees undergo yearly training on sexual harassment prevention. T. O'Brien.

C. **Code of Business Conduct and Ethics Policy**

Encore's Code of Business Conduct and Ethics Policy ("Business Conduct and Ethics Policy") is applicable to all employees. EX 10 at 1. The policy states:

> All employees are entitled to work in a safe environment where they are treated with dignity and respect. **The Company does not tolerate offensive, demeaning, insulting or otherwise derogatory conduct**, and is committed to a workplace that is free from sexual harassment and harassment based on other legally protected characteristics, or any other basis protected by federal, state or local law or ordinance or regulation. Such behavior is prohibited in any form, **whether it occurs between coworkers**, involves a supervisor, or happens with persons doing business with or for the Company, including guests and vendors.
>
> **Employees who violate this policy will be subject to disciplinary action, up to and including termination of employment. Disciplinary action can be taken in cases of inappropriate conduct, even if that conduct does not amount to a violation of the law.**

*Id*. at 5 (emphasis added).

D. **Encore's Zero Tolerance For Sexually Vulgar Comments**

The CBA became effective on April 19, 2021. JX 1 at 40. Since that time, Encore has terminated thirteen (13) employees and issued written warnings to three (3) employees who engaged in sexually harassing conduct. JX 2.[1] Encore has consistently terminated employees who make a sexually vulgar comment to a coworker:

> [22] Complainant alleges that while walking by Charged Party, Charged Party looked at Complainant and said "I know you are trouble." Complainant ignored Charged Party and continued to speak to another employee about Complainant's upcoming weekend plans. Charged Party interrupted Complainant and said to Complainant, "can I ride you like a pony?"
>
> Investigation substantiated the allegations. Charged Party was terminated.
>
> \*\*\*
>
> [24] Complainant alleges that while Charged Party and Complainant were talking about photo fillers, Charged Party referred to a picture of Complainant on social media saying

---

[1] The discipline summaries were created for an outside monitor that evaluates whether Encore is properly administering its Preventing Harassment and Discrimination Policy.

5

"the picture where you have your boobs hanging out." Complainant stated being uncomfortable about Charged Party's comment.

Investigation substantiated the allegations. Review of the picture on social media did not substantiate the description stated by Charged Party. The picture did not violate the Social Media Policy. Charged Party was terminated for the conduct.

\*\*\*

[26] Charged Party allegedly gave another employee a birthday card that stated "I hope you don't get raped by dolphins." Complainant saw the card and reported it to Employee Relations because the message made Complainant uncomfortable.

Employee Relations conducted an investigation that substantiated the allegations. The birthday card was left in an open area visible to all employees in the department. Complainant opened the card thinking that it was left for everybody to sign. Charged Party admitted to writing the card but stated that it was only for Complainant to see. Because of the inappropriateness of the message and the fact that the card was left in an open area, Charged Party was terminated.

\*\*\*

[33] Complainant, a casino supervisor, alleges Charged Party, a dealer, called him a "faggot," during conversation on the casino floor about football.

Employee Relations conducted an investigation which substantiated the allegation. Charged Party provided a written statement to the department in which he admitted to using the term and apologizing. Charged Party was terminated for violating the Prevention of Harassment and Discrimination Policy.

\*\*\*

[34] Complainant, Utility Houseperson, alleges that Charged Party, Utility Houseperson, made sexually based comments towards him in Spanish. Specifically, Complainant claimed that Charged Party stated, "Manuel quiere lechita" which directly translates to "he wants milk." This is a commonly used sexually based slang term.

Employee Relations conducted an investigation which substantiated the allegation. Charged Party denied making the inappropriate comment, however a Witness corroborated that Charged Party said, "Manuel quiere lechita." The reference "lechita" is a sexual comment in Spanish. Charged Party was terminated.

*Id*.

In the few sexual harassment cases where Encore issued written warnings in lieu of termination, the allegations did not involve sexually vulgar comments and/or could not be completely substantiated:

> [19]   Complainant alleges that Charged Party tries to hug Complainant and kisses Complainant on the cheek, forehead, and neck.  Complainant alleges telling Charged Party to stop but that Charged Party continues to try to hug and kiss Complainant.
>
> Investigation determined that Charged Party has hugged Complainant but was unable to substantiate the allegation that Charged Party kissed Complainant.  Investigation also could not confirm whether Complainant told Charged Party not to touch Complainant.  Charged Party was issued a Last & Final Warning for inappropriate conduct and violating policy and was instructed to have no further communications with Complainant.
>
> \*\*\*
>
> [28] Complainant alleges that Charged Party made comments that her shoes were not appropriate for the kitchen and that Complainant flirts with everyone.  Complainant stated that she just tries to be nice to everyone and was upset by the claim that her shoes were inappropriate and that she flirts.
>
> Employee Relations conducted an investigation, including a discussion with a witness, that substantiated the allegations.  Charged Party was given a written warning.
>
> \*\*\*
>
> [29] Complainant, a Coordinator, alleges Charged Party, a food server, has been making advances to her which are making her uncomfortable. Complainant reports Charged Party has made it clear that he is interested in her, he has stared at her body, and grabbed her hand.
>
> [29] Employee Relations conducted an investigation that substantiated the allegations. Charged Party admitted to Employee Relations that he had asked Complainant out even after Complainant said that she had a boyfriend and that Charged Party had touched Complainant's hand.  Charged Party responded to Employee Relations that he would not do such a thing again.  Based on these circumstances,  Charged Party issued a Written Warning for violation of the Preventing Harassment & Discrimination Policy.

*Id*.

### E.     Background On The Grievant's Employment

On June 14, 2019, Encore hired Underwood to work as a server at the On Deck Burger Bar ("On Deck"). EX 2. On Deck is an American pub-style restaurant located on the second floor

7

of the casino. As a server, Underwood was responsible for attending to guests before, during, and after their meals.

Underwood received Encore's Preventing Harassment Policy and understood that the resort did not tolerate sexual harassment. T. Underwood. Underwood also received sexual harassment training during his employment. T. Underwood; T. O'Brien (explaining that employees receive annual training on preventing sexual harassment).

### F.    The Grievant Makes A Sexually Vulgar Comment To A Host And Repeats The Comment After Being Told To Stop

On October 2, 2022, Underwood was working in On Deck's kitchen. A hostess, Ana Martinez Castaneda ("Martinez"), spotted him and saw that he appeared agitated. T. Martinez. Martinez and Underwood had worked together since the resort opened and had a friendly relationship. *Id*. Martinez told Yucely Perez, another On Deck employee in the kitchen, that Underwood seemed to be in a bad mood and proceeded to tell Underwood to cheer up. *Id*.

Underwood responded, "my name ain't dick, so keep it out of your mouth." T. Underwood; T. Martinez. Martinez was disturbed by Underwood's comment:

> I said, "are you serious?" and he proceeded to say it again. Then I said "Tim I get that we joke around but that was disrespectful, chill out." He said it a third time and at that point I walked away and had made the decision to tell [Flores].

EX 4 (Martinez Statement). Perez witnessed the interaction and described a similar series of events in her written statement:

> On Sunday October 2nd, 2022 I was polishing silver wear [*sic*] in the back when [Martinez] walked by on her way to break. [Underwood] was next to me doing roll ups… She made a comment that [Underwood] was angry and he responded, "my name isn't dick so keep it out of your mouth". She asked him if he was joking and he said no and he repeated it again. After that she went and spoke to the manager and that's all I saw.

EX 7 (Perez Statement).

Martinez felt disrespected and distressed by Underwood's comment. T. Martinez. She left the kitchen and found General Manager Cinthya Flores. *Id*. Flores testified that Martinez appeared extremely upset. T. Flores. Martinez was so worked up that she had trouble explaining what happened to her, so Flores suggested that Martinez take her break and then write a statement. *Id*. Martinez hesitated to write a statement because she feared retaliation from Underwood. *Id*. But she ultimately felt that a written statement was necessary because she was so "belittled, disrespected, and embarrassed." EX 6.

That night, Underwood texted Martinez that he "was honestly just joking around" when he made the "dick" comment and that he was "[s]orry if [he] made [her] feel a certain type of way." EX 5. Martinez did not respond. *Id*. Underwood then texted Martinez again saying, "Do you still hate me? Because I'm on this journey you set me on, and well who [the hell] kills a dead guy? Rude." *Id*.

### G. Employee Relations Investigates Underwood's Sexually Vulgar Comment and Terminates His Employment

On October 5, 2022, John O'Brien (Employee Relations Director) interviewed Underwood about his interaction with Martinez. T. O'Brien. Underwood admitted that he said to Martinez "my name ain't dick, so keep it out of your mouth." T. O'Brien; T. Underwood. Underwood acknowledged that Martinez told him twice not to "disrespect" her before she walked away. Underwood told O'Brien that he "did not think he crossed a line." *Id*. Kaitlin Dowdy, a Union steward who attended the meeting, admitted that Encore provided Underwood with an opportunity to explain his story. T. Dowdy.

O'Brien testified that Underwood's version of events aligned with the written statements provided by Martinez and Perez: Underwood made the "dick" comment to Martinez multiple times despite Martinez's protest that his conduct was inappropriate. T. O'Brien. Employee Relations

determined that Underwood had crossed a line: Martinez was clearly offended and disturbed by his comments and his conduct violated Encore's Harassment Prevention Policy. *Id*. As a result, Encore terminated his employment. *Id*.

## Issue

Did Encore have just cause to terminate the Grievant? If not, what shall be the remedy?

## Argument

### I. ENCORE HAD JUST CAUSE TO TERMINATE THE GRIEVANT

There is no dispute that Underwood committed the offense for which he was terminated. He repeatedly told Martinez that his name "ain't dick, so keep it out of your mouth." There is also no dispute that this referred to a sex act, was derogatory and disrespectful. Underwood was suggesting to Martinez that while his penis could be in her mouth, she should not speak his name.[2]

This conduct warranted termination. As a preliminary matter, Encore need only prove that Underwood's conduct violated its policies to establish just cause for his termination; it need

---

[2] As the discussed at the hearing, the phrase appears to be from the lyrics of a rap song called Streets on Lock by Young Jeezy:

…
Eyes wide shut I don't see these n*****.
'Cause deep in your heat you want to be me n*****.
Want to stand in my shoes
Want to f*** my hoes
Want to live my life
Want to rock my shows
Ya young punks with ya loose ass lips
I keep a AR with them loose ass clips
What type of real n**** name himself after a bag
N***** you's a hoe, a Louis Vuitton f**
My name ain't dick so keep it out ya mouth.
. . .

See www.lyrics.com_lyric_10238510_Young-2BJeezy_Streets-2Bon-2BLock&d=DwIFAg&c=fMwtGtbwbi-K_84JbrNh2g&r=21Yx5y2aycrMvQpWC3wLIFqlq9A3dX3kl8TKjPJCgpE&m=CvVqtqTx0F1ekPlbTbXNys-ikl-KmmaEDnc7ZT1L7k4VEq_5G_yCHlR6MmCUvnk0&s=9h2cRZG1RwpgketclwKDnzeGj6HR38dwKSNUJ0a9its&e=. As Martinez testified at the hearing, she had never used this phrase before and was not familiar with the song.

10

prove sexual harassment under federal or state law. *See* Bornstein, Tim, Ann Gosline, and Marc Greenbaum, eds. *Labor and Employment Arbitration*. 2d ed. (New York: Matthew Bender, 1997), Vol 1. chap. 21, 21.02. Here, the parties' agreement specifically provides that Encore shall have zero tolerance for this type of conduct and that sexual harassment can lead to immediate discharge. JX 1.

Beyond the CBA language, the Preventing Harassment policy prohibits "unwelcome sexual advances . . . and other verbal or physical conduct of a sexual nature when… [s]uch conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." EX 11. The policy clarifies that employees violate this policy and commit "verbal sexual harassment" when they make:

> innuendoes, suggestive comments, jokes of a sexual nature, sexual propositions, **lewd remarks and threats**; requests for any type of sexual favor (this includes repeated, unwelcome requests for dates); and **verbal abuse or "kidding"** that is oriented toward a prohibited form of harassment, **including that which is sexual in nature and unwelcome**.

*Id*. There is no dispute that Underwood made a lewd remark, and Martinez made clear that it was unwelcome.

Underwood's conduct provided sufficient grounds to terminate under the just cause standard. *Albertson's*, 117 LA 39, 46 (Kaufman, 2002) (where credible violations of the anti-harassment policy were established, it was not unreasonable for employer to choose to "enforce a policy of zero tolerance in this regard."). And Arbitrators have routinely upheld discharges that are a clear violation of Company policy, like here. *See ABM Gov't Services*, 138 LA 897 (Jennings, 2018) (upholding discharge decision where evidence demonstrated clear violation of company work rules); *see also Kuka Toledo Prod. Operations*, 138 LA 1241 (Belkin, 2018) ("Under the circumstances, due to the clear and convincing evidence of [Grievant]'s work rule

11

violations, there is no basis to overrule managerial discretion in regard to the discharge penalty. It is therefore determined that there was just cause for discharge."); *see also Gold Kist, Inc., 62 LA 139* (Ruthorford, 1974) (declining to "second guess" decision of employer to discharge employee where it was clear employee had violated work rules and the employer did not abuse its discretion in determining discharge was appropriate punishment). *see also National Gypsum Co.* 78 LA 226 (Klaiber, 1982) (just cause for discharge founds despite union argument regarding lack of progressive discipline where discharge served to protect co-workers).

Additionally, Encore has consistently enforced its Preventing Harassment Policy and terminated employees for similar conduct. *See* JX 2. Encore terminated an employee who described a picture to another employee as "the picture where you [the employee] have your boobs hanging out." *Id*. Encore terminated an employee who said to another employee that he "hoped" the employee does not "get raped by dolphins." *Id*. Encore terminated an employee asking a co-workers, "can I ride you like a pony?" *Id*. Encore terminated an employee for calling an employee a "faggot." *Id*. While Encore has issued written warnings for conduct that qualified as sexual harassment, those cases did not involve sexually vulgar comments and/or could not be completely substantiated. *Id*.

## II. THE UNION'S ARGUMENTS AGAINST TERMINATION ARE WITHOUT MERIT

At the hearing, the Union advanced a number of arguments to suggest that something less than termination was warranted. Each should be rejected. First, the Union attempted to claim that Underwood meant the statement, "my name ain't dick, so keep it out of your mouth," as some sort of "joke" and that he apologized. But Martinez did not take it as a joke. When he first said it, she asked him, "are you serious" and his response was to say it *again*. Martinez told him that the statement was disrespectful. She was distressed about the comment and Flores

witnessed that distress. Regardless, the policy prohibits "kidding" of a sexual nature because it is the impact on the victim that matters. As this case demonstrates, it otherwise be too easy for the harasser to claim they were just joking and essentially blame the victim for not being able to take a joke.

Further, Underwood's supposed apology was nothing of the sort. He didn't apologize for making the statement. He sent a text hours later apologizing for making her feel a "certain kind of way," whatever that meant. After Underwood sent the self-serving text, he accused Martinez via text message of "kill[ing]" him and called her "rude." Underwood's attempt to claim that this second text was a reference to a Netflix show about serial killer Jeffrey Dahmer, as opposed to his statement, "my name ain't dick, so keep it out of your mouth," strains credulity. Not only did that explanation never come up in the early grievance steps, there is nothing in the text messages to suggest that it is anything but a continuation of the discussion about his "dick" comment. In fact, the supposed comment about Jeffrey Dahmer was preceded by the sentence, "do you still hate me?" The only logic inference is that the entirety of the text message was about his repeated use of the phrase, "my name ain't dick, so keep it out of your mouth."

Second, the Union's suggestion that Encore was out to get Underwood is bizarre. It did not cause Underwood to repeatedly say to Martinez, "my name ain't dick, so keep it out of your mouth." Regardless, Flores did not target him. The purported rumor that Flores made somment comment about Underwood was just a rumor, and it was false. Flores told Underwood that it was false. And the chef who allegedly threatened him was in fact fired. The Union's suggestion that there was some sort of vast conspiracy to oust Underwood is absurd. Underwood engaged in serious misconduct and was terminated.

13

Finally, the Union's attacks on Martinez are reprehensible. Martinez was the victim. She is a member of the Union and deserved the Union's protection, not attacks on her character. Martinez denied engaging in similar conduct like that engaged in by Underwood. She denied ever making the comment that he made to her and denied ever hearing it before. And whether she was friendly with management or complained about other employees' conduct is irrelevant. Underwood admitted to saying, "my name ain't dick, so keep it out of your mouth."

The Union's focus on Martinez's text communications and TikTok videos is misguided. Underwood never complained to management about them. Even if Underwood somehow believed that the prior banter between he and Martinez meant that the statement he made would not be unwelcome, Martinez made clear to him that he had crossed the line. After Underwood said "my name ain't dick, so keep it out of your mouth" the first time, Martinez told him that it was not a joke. In response, Underwood did not moderate his behavior; he said it again. When Martinez told him that it was disrespectful, Underwood said it a third time. Thus, while the Union wants to claim that Martinez essentially asked for it because she had sent him TikTok videos or text messages in the past, Underwood ignored her repeated requests to stop. The statement was unwelcome; she told him that; and he kept saying, "my name ain't dick, so keep it out of your mouth." This is quintessential sexual harassment, and the Union's attempt to blame Martinez must be rejected.

## **Conclusion**

For these reasons, the grievance should be denied.

Dated: April 5, 2023                                    **ENCORE BOSTON HARBOR**

By its attorney,

*Robert A. Fisher*
Robert A. Fisher
Patrick A. Landroche
SEYFARTH SHAW LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
(617) 946-4949