IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WYNN MA, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>UNITE HERE! LOCAL 26,<br><br>   Defendant. | Civil Action No. 1:23-cv-11223-ADB |

**WYNN MA, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

  Defendant Unite Here! Local 26's (the "Union") Motion for Judgment on the pleadings should be denied. As set forth in Plaintiff Wynn MA, LLC's (the "Company" or "Encore") principal brief in support of its motion and as described below, the Arbitrator's award ordering reinstatement of the grievant, Timothy Underwood ("Underwood" or the "grievant"), should be vacated. The Arbitrator found that Underwood engaged in sexual harassment: he repeatedly told a female co-worker that his "name ain't Dick, so keep it out of your mouth." While the Union and Underwood tried to claim this statement was not sexual in nature, the Arbitrator rejected that, concluding that "Encore must be deemed to have demonstrated that the grievant engaged in verbal conduct of a sexual nature and directed it at a person to whom it was unwelcome." Award, p. 15. However, in nonetheless ordering Underwood's reinstatement with backpay, the Arbitrator disregarded the strong and dominant public policy against sexual harassment and the parties' collective bargaining agreement, which permits Encore to "immediate[ly] discharge" an employee who engages in sexual harassment.

  As described below, the Union's attempts to defend the Arbitrator's order of reinstatement misrepresent the Award, the parties' Agreement and the law. The Union's motion for judgment

305647750v.5

on the pleadings should be denied, and the Court should vacate the Arbitrator's Award.

## ARGUMENT

**I.      The Union Distorts the Facts as Found by the Arbitrator**

As a preliminary matter, the Union distorts certain facts in the Award in order to minimize Underwood's sexually harassing conduct. For example, the Union claims that Underwood texted the female co-worker that evening and apologized for upsetting her.  Union's Br., p. 3.  However, as described in the Award, Underwood's supposed apology via text was nothing of the sort. He texted the hostess that he was "joking around" and apologized only for "making her feel a certain way."  He never apologized to his co-worker for upsetting her and never apologized for his conduct. Five minutes after sending his original text message, he texted her, "Because I'm still on the journey you sent me on.  Well, who [the hell] kills a dead guy?  Rude."  Award, p. 6.  The suggestion that Underwood apologized for his conduct is belied by the text messages themselves. Further, the Union disputes that Underwood said "my name ain't Dick, so keep it out of your mouth" multiple times, despite that the Award states he said it at least twice and potentially three times.  Union Br. p. 3

The Union also misstates the stipulated issue before the Arbitrator.  It claims that the parties stipulated that "the dispute was whether the Company violated Article 17 of the collective bargaining agreement.  Union's Br. p. 4.  However, that was not the stipulated issue, *compare* Award, p. 2, and Encore's position was that Article 28 of the Agreement meant that Underwood could be immediately discharged if he were found to have engaged in sexual harassment (which he was).  Union's Br., Ex. C. [1]

---

[1] The Union also mischaracterizes Encore's assertion regarding the Massachusetts Gaming Commission by claiming that Encore somehow argued that "it violates a Massachusetts Gaming Commission mandate to 'reinstate an employee who has already sexually harassed his

2

## II.      The Award is Contrary to the Strong Public Policy Against Sexual Harassment

The Union seemingly concedes, or at least does not dispute, the existence of a strong public policy against sexual harassment in the workplace. *See* Union Br. at 15 ("even if this Court finds that a strong public policy exists with respect to preventing sexual harassment in the workplace, . . .")  It nonetheless claims that Underwood's reinstatement is permissible because Encore can still prevent sexual harassment in the workplace.  In making this argument, the Union ignores the impact of having Underwood return to the workplace.  Reinstatement sends the message to all employees that they can engage in harassment with impunity and suffer only minor discipline.  Federal and state anti-discrimination laws require more than that, precisely why the Second and Third Circuits have rejected such arbitration awards.

The Union's efforts to distinguish those decisions are without merit.  Without elaboration, the Union claims that *Stroehmann Bakeries* cannot be relied upon here because, in that case, the Arbitrator had not made a finding regarding sexual harassment, whereas in this case the Arbitrator found sexual harassment. Union Br. 13. Abandoning basic logic, the Union latches onto this distinction to argue the reinstatement order here can stand. But the Union's argument misses the fundamental point of the decision.  In *Stroehmann Bakeries*, the Third Circuit made clear that, had the employee engaged in sexual harassment, he could *not* be reinstated. The Third Circuit wrote:

> [The arbitrator's] award would allow a person who may have committed sexual harassment to continue in the workplace without a determination of whether sexual harassment occurred. Certainly, it does not discourage sexual harassment. Instead, it undermines the employer's ability to fulfill its obligation to prevent and sanction sexual harassment in the workplace.

*Stroehmann Bakeries v. Locl 776, Intern. Broth. of Teamsters*, 969 F.2d 1436, 1443 (3d Cir. 1992).

---

colleagues'." Union Br. at 15. In reality, Encore argued that, given the level of scrutiny it is subject to with respect to sexual harassment specifically, the Arbitrator's Award is troubling and at odds with the Gaming Commission's installation of on outside, independent monitor whose purpose is to ensure that Encore takes seriously complaints of sexual harassment.

3

While it is true that the arbitrator in *Stroehmann Bakeries* failed to make an express finding, the Third Circuit's focus was on ensuring that an award did not allow "a person who *may* have committed sexual harassment to continue in the workplace." *Id.* (emphasis added). Here, there is no "may" about it – the Arbitrator found that Underwood *did* commit sexual harassment. The Union offers no explanation why this somehow means the Award can stand, presumably because there is none.

The Union also suggests that the Second Circuit's *Newsday* decision contains "exceptionally rare facts" and is therefore inapplicable …" Union Br. at 13. But the Union ignores the holding of the decision. The Second Circuit affirmed the decision of the district court to vacate the award. As the Second Circuit explained, the district court found the order of reinstatement repugnant to the public policy against sexual harassment because of the impact on the grievant's victims and because reinstatement "'permit[s] his sexual harassment to threaten to perpetuate a hostile, intimidating and offensive work environment.'" *Newsday v. Long Island Typographical Union, No. 915, AFL-CIO*, 915 F.2d 840, 844 (2d Cir. 1990). As in that case, Encore should not have to bear the risk that Underwood's return to the property would undermine its legal (and contractual) obligation to maintain a workplace free from sexual harassment.

Because these cases are against it, the Union cites to other circuits that either declined to apply the public policy against sexual harassment or found that the arbitrator was free to decide remedy. *See, e.g*, *Westvaco Corp. v. United Paperworkers Intern. Union*, 171 F.3d 971, 971–973, 977–978 (4th Cir. 1999) ("We therefore agree with those circuits that have concluded the general public policy against sexual harassment is not sufficient to supplant labor arbitration of employee disciplinary sanctions"); *Commc'n Workers of Am. v. Se. Elec. Co-op*, 882 F.2d 467, 470 (10th Cir. 1989) (deferring to the arbitrator's remedy and noting that while "preventing the sexual assault

and abuse of women is of paramount importance, we believe the just cause determination fully incorporated this important concern under all of the circumstances."); *Chrysler v. Allied Indus. Workers of Am.*, 959 F.2d 685, 687–88 (7th Cir. 1992) (declining to allow policy against sexual harassment to prevent reinstatement based on its view that "purview of the collective bargaining agreement and public policy for the arbitrator to order his reinstatement."). The First Circuit has not squarely addressed the issue, but has cited affirmatively to *Stroehmann Bakeries* as setting out grounds for when a remand to a new arbitrator is appropriate. *See Bull HN Information Systems v. Hutson* 229 F.3d 321, 332 (1st Cir. 2000).

In any event, the cases cited by the Union are distinguishable. In *Westvaco*, the Fourth Circuit declined to join the Second and Third Circuits in recognizing a public policy against sexual harassment. *Westvaco*, 171 F.3d at 977–978. That is simply wrong; even the Union does not claim that there is no such public policy under federal and state law. In *Communication Workers*, the Arbitrator recognized that "this was a one-time offense and specifically noted Mr. Gray's 'penitent and apologetic attitude' in response to his act," and the Court deferred to the Arbitrator's choice of remedy. *Commc'n Workers*, 882 F.2d at 470. By contrast, Underwood repeated his conduct, despite his co-workers request that he stop and never truly apologized for what he said. Instead, Underwood texted his victim "[r]ude" and denied the sexual nature of his comments throughout the arbitration. And in *Chrysler*, the employer argued that reinstatement would create an inappropriate sex-based double-standard prohibited by the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), not that reinstatement of the grievant would impede its obligation to prevent sexual harassment. *Chrysler*, 959 F.2d at 687–88. Put simply, the authorities cited by the Union are not comparable to the instant case.

5

### III.   The Arbitrator's Award Ignores The CBA's Language Permitting Immediate Discharge

The Union's insistence that the Arbitrator simply applied traditional just cause principles demonstrates that the Arbitrator ignored the language of Article 28. The Union concedes, as it must, that Article 17, which discusses just cause, must be read in conjunction with Article 28. *See* Union's Br., p. 10. But the analysis of both the Union and the Arbitrator relegates Article 28 to an afterthought. Both the Union and Encore agreed in Article 28 that "[h]arassment . . . will not be tolerated," "[n]o employee shall be subjected to sexual harassment in the workplace" and that Encore "will take reasonable steps to eliminate sexual harassment from the property whether from supervisors, employees or customers." CBA, Art. 28. Contrary to the concept of progressive discipline articulated in Article 17, the parties agreed in Article 28 that sexual harassment in the workplace could lead to "immediate discharge." *Id*.

The Arbitrator's analysis of Article 28 is limited to one sentence, in which he noted that "Article 28's reference to discipline *might* argue for conferring more discretion on Encore than normal." Award, p. 16 (emphasis added). But there is no "might" about it; the plain language of Article 28 does confer more discretion upon Encore in cases involving sexual harassment. After acknowledging that point, the Arbitrator proceeded to disregard it by analyzing the issue under traditional just cause principles. Indeed, if there were any doubt that the Arbitrator ignored Article 28's instruction, the Court should look no further than the Arbitrator's earlier comment about Article 28 – that it constituted "strict regulation of workplace harassment." *Compare* Award, p. 3. In concluding that Underwood should be reinstated, the Arbitrator failed to follow, let alone give serious consideration to, the language of Article 28, despite the parties' admonition in Article 20 of the agreement that the arbitrator is bound by its terms and may not modify them.

In this respect, the Arbitrator's disregard of Article 28 is akin to the First Circuit's decision

6

305647750v.5

in *Poland Spring Corp. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC, Local 1445*, 314 F.3d 29, 34 (1st Cir. 2002), in which it vacated an arbitration award reinstating an employee guilty of insubordination.  The arbitrator had concluded that the employee had committed the offense but believed that termination was too harsh.  However, because the employer and the union had agreed in the collective bargaining agreement that insubordination warranted termination, the First Circuit held that "upon reaching the conclusion that [the grievant's] conduct was insubordinate, the arbitrator was barred from further inquiry because such additional probing constituted ignor[ing] the plain language of the contract."  *Id.*, *see also Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d 940, 941 (1st Cir. 1988) (vacating arbitration award where "arbitrator exceeded the authority granted to him by the parties").  As in that case, upon concluding that Underwood had "engaged in verbal conduct of a sexual nature" and the conduct was "unwelcome," he was required to uphold the termination pursuant to the "strict regulation" of workplace harassment in Article 28 of the Agreement rather than fashion his own remedy.

The Union attaches the Company's post-hearing brief to the arbitrator to suggest that it too agreed that just cause should apply, but the Union ignores what the Company actually said in its brief in this respect.  The Company specifically explained that Article 28 reflected the parties' express agreement that there would be zero tolerance of sexual harassment in the workplace and that the Union's alternative argument[2] that termination was too harsh was contrary to that language.  The Company never stated or suggested that the Arbitrator had a free hand to determine a punishment other than termination.

Because the Arbitrator disregarded the language of Article 28, the Union contends that

---

[2] The Union's primary argument was that Underwood never engaged in sexual harassment.  It tried to claim that Underwood's repeated statements were not sexual in nature and attempted to blame the victim.

7

Article 28 does not mandate immediate discharge.  However, the Union again misses the point.  Article 28 recognizes that because sexual harassment will not be tolerated, and the parties agreed Encore could impose immediate termination; it need not apply progressive discipline.  This is similar to the language at issue in *Georgia-Pacific Co.*, in which the parties agreed that the employer could impose immediate discharge for some offenses, even though it did not universally do so.  The First Circuit vacated the award of lesser discipline.  The union in that case argued, just as the Union does here, that the just cause inquiry still applies.  The First Circuit explained:

> We disagree. The language of the agreement is unequivocal in that it establishes two independent justifications for dismissal: 1) just cause and 2) a list of offenses, including dishonesty, for which immediate discharge is appropriate. . . . The language in this agreement is unambiguous that once dishonesty is established, no further showing is required. In essence, dishonesty, as a ground for immediate discharge, is per se just cause.

864 F.2d at 944-45.  As in that case, the language of Article 28 must be read as allowing Encore to decide whether immediate termination is warranted, and once it established that Underwood committed sexual harassment, the Arbitrator was bound to uphold the termination.  He was not allowed to second-guess Encore's determination that termination was warranted.  Any other conclusion would render the "immediate discharge" language as surplusage.  *See id*. at 945 ("Moreover, if we accepted the Union's argument, we are unable to see any reason why the list of offenses sanctionable by immediate discharge was included in the language of the agreement").

The Union's claim that Encore's decision to not fire a small subset of individuals means that just cause should apply was expressly rejected by the First Circuit in *Georgia Pacific*.  In that case, the company had not always imposed immediate discipline for dishonesty, but the Court explained the language *permitted* the employer to do so, thereby preventing the arbitrator from substituting his judgment once dishonesty was found to have occurred.  *Id*. at 943, 945. In this respect, the Arbitrator's attempt to compare Underwood's harassment of a co-worker with other

8

305647750v.5

instances demonstrates why the parties left it to Encore to determine when immediate discharge is warranted. Based solely on a chart of other instances, the Arbitrator concluded that Underwood's conduct was no worse than an individual who received a written warning for asking a co-worker out, looking at her and touching her hand.  The Union's submission demonstrates why Encore stayed its hand in that instance: the employee admitted to the conduct and promised to not do such a thing again.  Union Br. Ex. C, p. 7.  But Underwood refused to admit even at arbitration that what he did was inappropriate, claiming that his reference to "dick" was as a nickname for the name Richard.  Therefore, Underwood's conduct was unlike that of his alleged comparator, and Encore determined that the appropriate discipline was immediate discharge. Article 28 precluded the Arbitrator was second-guessing Encore in this regard.

Thus, for these reasons and those set forth in its principal brief, Encore submits that the Award should be vacated because it does not draw its essence from the parties' Agreement.

**IV.     The Union's Request for Interest and Attorneys' Fees is Meritless**

The Union's request for interest and attorneys' fees is without merit and demonstrates only the Union's failure to comprehend or respect Encore's obligation to prevent sexual harassment on its property under the law and in accordance with the parties' Agreement.  There is no basis to award interest on any backpay award to Underwood.  In *Burke Distrib. Corp. v. Prof'l Salemen's Union*, No. CIV.A. 84-3246-N, 1986 WL 10332, at *2 (D. Mass. Sept. 10, 1986), this Court analyzed a number of factors and determined that an award of interest on the backpay awarded by the arbitrator was inappropriate. The court reasoned that "the Labor Management Relations Act does not specifically authorize such a payment," and "in awarding the grievant back pay in his decision, the arbitrator [] did not see fit to include any provision for interest." *Id*. Similarly, here, the Arbitrator did not award interest any backpay award.  Award, p. 19.

The Union's request for fees borders upon being frivolous.  Attorneys' fees may be

9

imposed against parties who advance arguments that are "frivolous, unreasonable and without foundation." *Local 285 Intern. Union AFL-CIO v. Nonotuck Resource Assocs., Inc.*, 64 F.3d 735 (1st Cir. 1995). The Union cannot meet this standard. The First Circuit has recognized that, in cases involving challenges to arbitral awards on public policy grounds, no attorneys' fees can be awarded if "[i]t was at least arguable that there is a public policy in Massachusetts" that supports the plaintiff's theory of vacatur. *North Adams Regional Hosp. v. Mass. Nurses Ass'n*, 74 F.3d 346, 348–49 (1st Cir. 1996). Here, the Union wisely does not even pretend to argue that the policy against sexual harassment is not dominant and well-established in Massachusetts. Indeed, the Union acknowledges, as it must, that the Second and Third Circuits have vacated arbitration awards for violating this strong public policy against sexual harassment in the workplace by ordering reinstatement of a grievant who engaged in sexual harassment. While the Union contends that decisions of other circuits support its position, the fact that courts have split on the application of the public policy exception in this context demonstrates Encore's position cannot be viewed as "frivolous, unreasonable and without foundation."  Further, the language of Article 28 establishes that the Arbitrator misapplied the Agreement, and as described above, several decisions of the First Circuit support that conclusion.

## CONCLUSION

Encore respectfully requests that the Court grant its motion for judgment on the pleadings, deny the Union's motion, vacate the award and grant such other and further relief as the Court deems just and proper.

DATED: October 30, 2023          Respectfully submitted,

WYNN MA, LLC

By Its Attorneys,

*/s/ John T. Ayers-Mann*
Robert A. Fisher
rfisher@seyfarth.com
John T. Ayers-Mann
jayers-mann@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, Massachusetts  02210-2028
Telephone:  (617) 946-4800
Facsimile:  (617) 946-4801

11

305647750v.5

## **CERTIFICATE OF SERVICE**

I, John Ayers-Mann, hereby certify that on Monday, October 30, 2023, I caused a true and accurate copy of the foregoing document to be filed and uploaded to the CM/ECF system.

*/s/ John T. Ayers-Mann*
John T. Ayers-Mann
