UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WYNN MA, LLC,

Plaintiff

v.

UNITE HERE!,
LOCAL 26

Defendants

C.A. No. 1:23-cv-11223

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, INCLUDING ATTORNEY FEES, COSTS AND EXPENSES**

In its opposition, Wynn MA, LLC ("the Plaintiff" or "the Company") ignores significant facts, including its own position at arbitration and the Arbitrator's stated rationale, because acknowledging these facts shows that its Complaint is wholly without merit. Defendant UNITE HERE!, Local 26 ("the Defendant" or "the Union") continues to assert that this award must be confirmed and that Plaintiff should be assessed fees and costs for its frivolous action.

**I. THE PLAINTIFF CANNOT LOGICALLY ARGUE THAT JUST CAUSE APPLIES BUT ARTICLE 28 PRECLUDES REINSTATEMENT.**

The Plaintiff incorrectly disputes that the parties asked the Arbitrator to apply Article 17 at arbitration. [Plaintiff's Reply, p. 2.] Article 17 requires just cause for any discipline whereas Article 28 does not reference just cause. The parties asked the Arbitrator to answer "Whether there was just cause for the grievant's discharge." [Award p. 2.] Plaintiff cannot both agree that just cause applies, as it did at hearing, then also claim that Article 17 does not apply. This break in logic exposes Plaintiff's contractual argument as entirely without merit.

The Plaintiff wants this Court to read Article 28 in a vacuum, hoping to analogize that article to cases where parties have specifically enumerated penalties for specific offenses. In *Poland Spring Corp. v. United Food and Commercial Workers Int'l Union, AFL-CIO-CLC, Local 1445*, and *Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union,* the collective bargaining agreements included, in their discipline articles, specific offenses which constitute just cause and the appropriate level of punishment. 314 F.3d 29, 31 (1st Cir. 2002); 864 F.2d 940, 942 (1st Cir. 1988). When the parties have negotiated with such specificity, "[t]his Court has long held that once an arbitrator finds that an employee has committed *an act specifically listed in the collective bargaining agreement as providing just cause for termination*, the arbitrator is not free to fashion a separate remedy…." *Poland Spring Corp.*, 314 F.3d at 34 (Emphasis added).

In this case, Article 17, the parties' discipline and discharge article, does not include such specific language. Article 28, the parties' Sexual / Harassment and Workplace Violence article, outlines the parties' mutual commitment to a workplace free from harassment and workplace violence, which includes "discipline" for engaging in such conduct, "including immediate discharge," but does not "[enumerate] offenses that are subject to immediate discharge and [distinguish] those offenses from other forms of misconduct that warrant a warning prior to discharge." *Poland Spring Corp.*, 314 F.3d at 35; CBA, Article 28 ("*will be subject to discipline* including immediate discharge" (emphasis added).) The Arbitrator needed to analyze the relationship between Articles 17 and 28 and, respectfully, if he is even arguably interpreting the contract, his conclusion is not subject to review. *See, e.g.*, *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960).

The Arbitrator correctly noted Article 28 "makes no reference to just cause, much less progressive discipline." [Award, p. 12–13.]

> "This could suggest that the parties intended a standard other than pure just cause standard to apply in cases like the present. Alternatively, the term 'discipline' could reference the just cause standard in Article 19. Because this case has been submitted under the just cause standard, the arbitrator will apply the traditional just cause standard." *Id.*

He directly addressed the Plaintiff's contention that it argues again to this Court, writing,

> "Article 28's reference to discipline might argue for conferring more discretion on Encore than normal. Doing so would undermine the Agreement's recognition of the role progressive discipline plays in the just cause analysis. The Agreement's reference to just cause also preserves the Union's ability to demonstrate that the grievant was treated more harshly than would be suggested by an employer's previous discipline for the same offense." *Id.* at 16.

To be clear, the Union recognizes that many acts of sexual harassment, harassment, and workplace violence should result in immediate discharge without the benefit of progressive discipline. Likewise, the Union agrees with the Company that there are cases when sexual harassment should not result in immediate discharge. Article 28 reflects that mutual understanding and does not compromise the parties' agreement, pursuant to Article 17, that discipline and discharge must only occur for just cause, including progressive discipline "where warranted." [CBA, p. 14.]

## II. IN ADDITION TO UNREASONABLE CONTRACT INTERPRETATION ARGUMENTS, IT IS FRIVILOUS TO CLAIM THAT A PUBLIC POLICY EXCEPTION PROHIBITS REINSTATEMENT FOR ANY EMPLOYEE WHO ENGAGES IN SEXUAL HARASSMENT WHEN PLAINTIFF REPEATEDLY ALLOWS EMPLOYEES WHO ENGAGED IN SEXUAL HARASSMENT TO CONTINUE WORKING.

The Company cannot credibly claim that a well-defined, dominate public policy prohibits the reinstatement of any employee who engages in sexual harassment if the Company itself

continues to employ at least six other individuals who engaged in sexual harassment. It is "frivolous, unreasonable and without foundation," to claim that a there is a dominant, well-defined, strong public policy that precludes reinstatement of any employee who engages in sexual harassment, regardless of whether the Union challenges whether the existence of a well-established policy against sexual harassment in the abstract.

The Union's argument is based in part on the caselaw that currently exists but more so on the incongruence of the Company's own position. The Union concedes that the First Circuit has not addressed the existence of the asserted public policy or how it might apply, although the caselaw in every other circuit does not even arguably support the Company's position that every instance of sexual harassment requires immediate discharge. A faulty legal position might not entitle Defendant to fees and expenses. When the lack of legal support is coupled with the Plaintiff's own conduct, it is clear that even the Plaintiff does not believe public policy prohibits it from reinstating every employee who engages in sexual harassment. It has issued less severe discipline at least six other times, including three days before it decided to discharge the grievant. Invoking a vague public policy to prevent sexual harassment should not insulate the Plaintiff from asserting claims that are otherwise frivolous.

## III. INTEREST ON BACKPAY IS APPROPRIATE IN THIS CASE.

The Union continues to assert that interest on the Grievant's backpay is appropriate in this case, which is supported by the Company's citation. In *Burke Distributing Corp. v. Professional Salesmen's Union*, the Court recognized that it was within its discretion to award prejudgment interest, even though it was not specifically authorized under the Labor Management Relations Act. Civ. A. No. 84-3246-N, 1986 WL 10332 (D. Mass. Sept. 10, 1986). It declined to do so because the Arbitrator in that case had not and "since the employee-union member was

reinstated immediately after the arbitrator made his award, he has not lost any wages as a result of Burke's filing of this lawsuit…." *Id.* at *2. Here, the Plaintiff has refused to reinstate the Grievant, who continues to lose wages as a result of Plaintiff's unreasonable appeal. Accordingly, interest is warranted, in addition to attorney's fees, costs, and all other remedies the Court deems proper.

Respectfully submitted,

UNITE HERE, Local 26,

By its Attorney,

/s/ James Hykel
James Hykel, Esq. (Bar 666861)
Pyle Rome Ehrenberg, PC
2 Liberty Square, 10th Floor
Boston, MA 02109
(617) 367-7200
jhykel@pylerome.com

Dated: November 13, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 13, 2023.

/s/ James Hykel
James Hykel